898 F.2d 396
 UNITED STATES of America
v.
ONE 107.9 ACRE PARCEL OF LAND LOCATED IN WARREN TOWNSHIP,
BRADFORD COUNTY, PENNA. as Described in Deed Book 608 Page
792, Recorder of Deeds Office, Bradford County, Penna.,
Together With all of its Improvements, Appurtenances,
Buildings, Structures, Furnishings, Equipment, Fixtures,
Merchandise and Other Items.
Appeal of Stephen L. TIMCHACK and Josephine Timchack, Claimants.
 No. 89-5358.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 Oct. 19, 1989.
Decided March 20, 1990.
Rehearing and Rehearing In Banc Denied June 18, 1990.
 
 Gerald A. Kinchy, DeSisti & Keeffe, Sayre, Pa., for appellants.
 James J. West, U.S. Atty., Richard W. Sponseller, Asst. U.S. Atty., Harrisburg, Pa., for appellee.
 Before BECKER, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court granting the government's motion for summary judgment in its "Complaint For Forfeiture In Rem" under 21 U.S.C. Sec. 881(a)(7) (1988). Jurisdiction in the district court was based on 28 U.S.C. Secs. 1345, 1355, 1356 (1982). We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 
 2
 The complaint sought the forfeiture of over 100 acres of contiguous land titled in the names of Stephen L. Timchack (Stephen) and Josephine Timchack (Josephine), his wife. The property was duly seized[1] and notice was given to the defendants as interested parties. The defendants filed an answer and asserted several defenses. Thereafter, the parties conducted discovery.
 
 
 3
 The undisputed discovery disclosed that at least some of the real property had been used for seven or more years to commit and to facilitate the commission of controlled substance violations by growing and storing marijuana thereon. Based on the record made by both sides, the district court granted the government's summary judgment motion and thus upheld the forfeiture of the entire property to the government. Defendants' appeal followed.
 
 
 4
 * We note at the outset that defendants do not contend on appeal that the government failed to make the requisite probable cause showing with respect to the illegal use of at least some of the land. Such a contention by defendants would be frivolous on this record.
 
 
 5
 We address defendants' contentions in light of the controlling statutory provision.
 
 Title 21 U.S.C. Sec. 881(a)(7) provides:
 
 6
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 7
 ....
 
 
 8
 (7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 9
 Given this record, Stephen, understandably, does not suggest that he made a showing that entitled him to a trial under the no-knowledge or the no-consent provisions of the statute. Josephine, however, does contend that it was error for the district court to construe 21 U.S.C. Sec. 881(a)(7) to permit forfeiture of her ownership interest without trial in view of her assertion that while she knew of the illegal use she did not consent to the use of the land for illegal purposes.
 
 
 10
 The government responds that the issue of lack of consent was never raised as a defense in Josephine's answer and therefore should not be considered on appeal. It is true that Josephine did not assert a lack of consent defense in her answer. However, she did advance the defense of lack of consent in her papers resisting summary judgment. But, more to the point, this defense was explicitly decided against her by the district court in its opinion. We are therefore satisfied that the issue is properly before us.
 
 
 11
 The district court, relying on United States v. 124 E. North Ave., 651 F.Supp. 1350, 1357 (N.D.Ill.1987), construed Sec. 881(a)(7) to require a claimant to prove both lack of knowledge and lack of consent to prevail on an innocent owner defense. Since Josephine admitted that she had knowledge, the district court rejected her lack of consent contention. At the time it made its ruling, the district court did not have the benefit of our contrary construction of that section of the statute in United States v. Parcel of Real Property Known as 6109 Grubb Road, 886 F.2d 618 (3d Cir.1989). We held there that a party in interest could successfully assert an innocent owner defense by proving either lack of knowledge or lack of consent.
 
 
 12
 Since the district court misinterpreted the statute in light of our controlling construction of Sec. 881(a)(7), we would ordinarily remand for a consideration of the consent issue. However, since this appeal arises from a grant of summary judgment for the government and is subject to plenary review, we will exercise our discretion to determine whether that judgment was nevertheless dictated by the record made in the district court. Our analysis is guided by a recent Supreme Court decision illuminating the proper application of summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).
 
 
 13
 In Zenith Radio the Supreme Court stated that to resist successfully a summary judgment motion, the opposing party must come forward with specific facts showing that there is a genuine factual issue for trial. Where the full record, taken together, could not lead a rational trier of fact to find for the non-moving party, no genuine issue exists for trial. The test is also stated in terms of whether the non-moving party could, on the record, successfully resist a motion for a directed verdict. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (stating issue as whether there can be but one reasonable conclusion as to the verdict).
 
 
 14
 We ask then whether, under the foregoing standard, Josephine made a sufficient showing to raise a genuine issue for trial as to her non-consent defense? We turn to the record.
 
 
 15
 Josephine stated in answer to government interrogatories and in an affidavit that she "always pleaded with Stephen Timchack to stop using and growing marijuana and threatened to leave him if he did not stop." This self-serving statement is to be contrasted with the following undisputed facts. Josephine, who had been married to Stephen for many years, knew that Stephen had grown marijuana in their yard for over seven years before he was arrested. She admitted that the plants were grown in a garden of about 25 X 35 feet; that she pulled some plants from the garden on occasion; that she bought plastic bags that were used to store refrigerated marijuana in the house; and that she knew marijuana seeds were kept for experimentation and replanting purposes. Finally, she kept and maintained in the house elaborate records of the marijuana. She gave the following answers to government interrogatories in connection with certain of these records that were seized by the government:
 
 
 16
 f) This is a record of plants [marijuana].
 
 
 17
 g) This is a record of plants in the garden prepared by Josephine Timchack.
 
 
 18
 ....
 
 
 19
 i) This is a record of ounces of marijuana harvested in the garden prepared by Josephine Timchack.
 
 
 20
 j) This is a record of plants in the garden prepared by Josephine Timchack.
 
 
 21
 k) This is a record of plants in the garden prepared by Josephine Timchack.
 
 
 22
 Given these basically undisputed facts, was any genuine issue created as to the non-consent issue?
 
 
 23
 Josephine's self-serving, uncorroborated assertion that she always pleaded with her husband to stop growing marijuana and threatened to leave him if he did not stop rings hollow when juxtaposed with her substantial and protracted involvement in the marijuana operation taking place on the property. We are completely satisfied that Josephine, who had the burden of proof, did not, on this record, create a genuine issue of material fact as to her non-consent defense. Thus, there was no basis for a trial under the controlling law unless, as she claims, the district court erroneously rejected her assertion that her actions were the product of duress.
 
 II
 
 24
 Josephine insists that the actions by her which tend to negate her non-consent defense resulted from duress exerted by Stephen. Duress, of course, is an affirmative defense. Fed.R.Civ.P. 8(c). Here, it is invoked by her to negate government evidence that rebutted her non-consent defense. We think duress is relevant to a non-consent defense.
 
 
 25
 Once again, the government correctly points out that duress was not pleaded by Josephine as an affirmative defense. However, she raised the issue in her papers in opposition to the government's motion for summary judgment. The district court ruled that the defense was waived under the circumstances. It proceeded, however, to determine whether summary judgment for the government was warranted in spite of Josephine's contention that she did what she did because of duress exerted by Stephen.
 
 
 26
 In the interest of justice, we will also address Josephine's defense. In a criminal law context, at least, duress contains three elements:
 
 
 27
 (1) an immediate threat of death or serious bodily injury;
 
 
 28
 (2) a well-grounded fear that the threat will be carried out; and,
 
 
 29
 (3) no reasonable opportunity to escape the threatened harm.
 
 
 30
 At the outset we think that there is nothing in this record to create a genuine issue of fact as to such elements. We shall, nevertheless, assume that a showing of duress would require less demanding proof in a civil context. We shall further assume that the standard could be met by proof by Josephine by a preponderance of the evidence that her actions were not the product of her own free will. Given that standard, is there a genuine issue of material fact here as to duress?
 
 
 31
 Josephine relies on the assertion that she pleaded with her husband to stop his illegal activities, threatened to leave him, was afraid of him, and had to do whatever he told her to do.
 
 
 32
 However, when she was asked at her deposition about the alleged duress by Stephen, she testified as follows:
 
 
 33
 Q. Did he force you, threaten you to make you help him?
 
 
 34
 A. No, not force, I just thought it was a normal thing that wives did, he always commanded me to get a cup of coffee, I got it. Get me zip lock bags, I got it. Anything he asked I did. I was all by myself, I don't have no friends. I was always by myself. I went shopping by myself, I did everything by myself.Q. Did you ever try to refuse to help him record the marijuana or help him by diagramming out the garden?
 
 
 35
 A. Yes, yes. And I was called names.
 
 
 36
 Q. So you did it then?
 
 
 37
 A. I did it, yes. I do what I was told.
 
 
 38
 Again, we think such uncorroborated testimony may evidence submission, but it falls far short of reaching the level of conduct by Stephen that would permit a conclusion that a genuine issue of fact existed as to the defense of duress. A less rigorous application of the genuine issue requirement would make a mockery of the forfeiture provision of this statute in a marital context.
 
 
 39
 We conclude that there is no genuine issue of material fact in the record as to Josephine's duress defense and that she is not entitled to a trial on that defense.
 
 III
 
 40
 Both Stephen and Josephine contend that the district court erred in granting a summary judgment forfeiture of all the land because a genuine issue of material fact existed as to whether all of the property was used to commit or to facilitate the commission of the offense. Unlike the issues previously discussed, we think this issue may be raised by Stephen as well as Josephine. They urge that the court had discretion to determine the extent of the forfeiture and since much of the land was not really connected with the illegal activity, a fact finder should have been permitted to decide what amount of the land was forfeited for illegal use. The government responds that the statute mandates forfeiture of the entire tract here.
 
 
 41
 The relevant portion of Sec. 881(a)(7) provides:
 
 
 42
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 43
 ....
 
 
 44
 (7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment,.... (emphasis added).
 
 
 45
 We think the language of the statute means what it says. When it is invoked by the government it embraces all of a unitary tract although only part is used in violation of the provision of Sec. 881(a)(7).
 
 
 46
 Our conclusion is fully supported by case law elsewhere. United States v. Santoro, 866 F.2d 1538 (4th Cir.1989); United States v. Reynolds, 856 F.2d 675 (4th Cir.1988); United States v. Real Property & Residence at 3097 S.W. 111th Ave., 699 F.Supp. 287 (S.D.Fla.1988). We therefore reject the defendants' argument that an issue of material fact existed as to the extent of the forfeiture.
 
 IV
 
 47
 Defendants assert, alternatively, that a reading of the statute to permit forfeiture of the entire tract violates the eighth amendment's protections against cruel, unusual, and disproportionate punishment.
 
 
 48
 When a statute is challenged under the eighth amendment on the ground that it is criminal rather than civil, a court will engage in a two-level inquiry. First, it will determine the congressional purpose. Second, if the statute is civil, the court will decide whether the statutory scheme is so punitive either in purpose or effect as to negate a civil objective. Only the clearest proof will suffice to support a finding of unconstitutionality. United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).
 
 
 49
 We are satisfied that the language of the subchapter shows that Congress intended Sec. 881(a)(7) to be a civil remedy, 21 U.S.C. Sec. 801, et seq. We say this because Sec. 881(a)(7) appears under Part E, Administrative and Enforcement Provisions of the subchapter, not in Part D, Offenses and Penalties. Furthermore, the civil proceedings of the Custom Laws for in rem proceedings apply, 21 U.S.C. Sec. 881(d) (1988). We conclude that on its face the statute provides a civil sanction. Compare Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); Santoro, 866 F.2d at 1543-44.
 
 
 50
 We turn to the second level of the inquiry, whether the civil remedy is so punitive in purpose or effect that it negates congressional intent. Although reasonable minds might disagree, we conclude that the purpose or effect of the statute does not belie a civil sanction. Rather, it is a permissible civil response by Congress to complement criminal law enforcement directed at a most corrosive force in our society. In reaching our conclusions, we are supported by the decision in Santoro, 866 F.2d 1538, where a similar analysis was employed and the same result reached.
 
 
 51
 We conclude that the application of Sec. 881(a)(7) here does not result in a violation of defendants' eighth amendment rights.
 
 V
 
 52
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The seizure refers to 107.9 acres. However, the government's complaint notes that defendants held 104.9 acres on the pertinent date. We assume that the matter will be addressed by the district court to the extent there is ambiguity in the record as to the extent of the forfeiture