[Nos. 13877-8-II; 13878-6-II; Division Two. February 4, 1993.]
14281-3-II.

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT LEROY CLARK, ET AL, *Appellants.*

CLALLAM COUNTY, *Respondent,* v. REAL PROPERTY KNOWN AS 183-D HOLGERSON ROAD, ET AL, *Appellants.*

594

*Reba Weiss,* for appellants.

*David Bruneau, Prosecuting Attorney,* and *Robert Strohmeyer, Deputy,* for respondents.

ALEXANDER, C.J. — In this consolidated appeal, Robert Leroy Clark appeals his conviction, based on stipulated facts, on one count of possession of cocaine and one count of possession of marijuana with intent to manufacture or deliver, and Linda Clark appeals her jury conviction on one count of possession of marijuana with intent to manufacture or deliver. The Clarks appeal the trial court's order, entered in a separate proceeding, forfeiting all of their interest in certain real and personal property to Clallam County. We affirm the convictions and the forfeiture order.

FACTS RELATING TO CRIMINAL CHARGES

An investigation into the Clarks' alleged marijuana growing operation began in September 1989, when Deputy Michael Dick of the Clallam County Sheriff's office introduced Robert Swanton to Matthew Dalton, a detective with the Clallam County Drug Task Force. During Dalton's meeting with Swanton, Swanton expressed a belief that Linda and Robert Clark were growing marijuana in their garage.

That same afternoon, Dalton and Swanton went to the chambers of a Clallam County Superior Court judge for the purpose of securing a warrant to search the Clarks' residence and premises. After Dalton was put under oath by the

superior court judge, he explained that he had met Swanton that morning through the auspices of Deputy Dick. He went on to say:

> he [Swanton] told me that he had been involved in a marijuana growing operation that was operated by Robert L. Clark of 183-D Holgerson Road, Sequim . . .
>
> He said his involvement with Mr. Clark began around 1981 or '82 when Mr. Clark, who is a neighbor of Mr. Swanton, inquired of Mr. Swanton whether or not Swanton could help Clark with some electrical problems in his garage of a marijuana growing operation . . ..
>
> Mr. Swanton told me that he did assist Mr. Clark in setting up a marijuana growing operation in the garage. Their partnership lasted for several more years. But around 1984 Mr. Clark and Mr. Swanton broke up their partnership and also ended their friendship. . . .

Swanton was placed under oath by the judge and he then answered questions posed by Dalton. Swanton said that he had helped the Clarks set up the marijuana grow operation, but that his friendship with the Clarks ceased after Robert Clark got involved in cocaine. Swanton described, in detail, the marijuana plants that he believed were located at the Clarks' property and the intricate lighting system that was on the property. He also said that Robert Clark had been selling the marijuana in Seattle but had quit for a while, possibly out of fear that Swanton would report him because he had "hassled" Swanton.

Swanton said that he knew that the Clarks had carried on the grow operation during the previous winter, explaining that when it snowed, the roof of the Clarks' garage was partially clear of snow. Swanton theorized that heat from the grow operation, which radiated from a vent in the garage, caused the snow to melt. Swanton said that he later visited the garage and detected the odor of growing marijuana emanating from the vent. Swanton said his most recent visit to the Clarks' residence was earlier that day. He described in detail the construction of the vent, and said that by looking through the vent, he could see an 8- to 10-foot marijuana plant.

Dalton told the judge that he had viewed the Clarks' residence from Swanton's property and found Swanton's description of the property consistent with what he had observed. The judge issued a warrant to search the Clarks' residence. Upon execution of the warrant, controlled substances, specifically marijuana and cocaine, were found in the Clarks' garage and in a vehicle located on the premises.

Robert Clark was charged in Clallam County Superior Court with one count of unlawful possession of a controlled substance (marijuana) with intent to manufacture or deliver, and one count of unlawful possession of a controlled substance (cocaine). Linda Clark was charged in that same court with one count of unlawful possession of a controlled substance (marijuana) with intent to manufacture or deliver.

The Clarks moved jointly to suppress the evidence seized pursuant to the search warrant, maintaining that the warrant was invalid because information, material to the informant's credibility, was withheld from the judge who issued the order for the warrant. A hearing on their motion was held before another superior court judge. That judge was presented with a transcript of the testimony Swanton and Dalton had given in support of the warrant, together with additional facts that had not been made known to the judge who had issued the warrant. The judge found that the omitted facts fell into three categories:

> First, that the informant [Swanton] did not admit his involvement in setting up the Defendants' marijuana growing operation until after confrontation by [Deputy] Kirst and assurance that he could not be prosecuted [because the statute of limitations had expired]. Second, that law enforcement suspected [Swanton] of being involved in illegal activity [based on allegations by the Clarks that Swanton was a marijuana grower]. Third, that there was an ongoing feud and continued animosity between the Defendants and [Swanton].

The judge concluded that although the omitted information was material in that it reflected on Swanton's credibility, the omissions had not been made deliberately or with a reckless disregard for the truth. He further found that the

first category of omitted information did not detract from a finding of Swanton's credibility, that the second category never rose above mere suspicion of criminal activity, and that the third category was not entirely omitted because Swanton testified to the strained status of his relationship with the Clarks. Accordingly, the judge denied the Clarks' motion to suppress.

Based on stipulated facts, the trial court found Robert Clark guilty of the charges against him. Linda Clark was found guilty by a jury of the charge against her. Their separate appeals were consolidated by this court.

### FACTS RELATING TO FORFEITURE OF PROPERTY

At about the time the criminal charges were filed, Clallam County filed a complaint, pursuant to RCW 69.50, for forfeiture of certain of the Clarks' property. A trial was held before the same superior court judge who had presided at the Clarks' criminal trial. Following that hearing, the trial court entered findings, which are unchallenged, in support of its order forfeiting to Clallam County certain real and personal property. The trial court's findings are as follows:

> The Court finds that the Defendants . . . are owners of real property known as 183-D Holgerson Road, City of Sequim, Washington . . .
>
> Pursuant to a search of the above-described premises on September 12, 1989, more than five (5) marijuana plants were found growing in the garage detached from the residence of the Defendants; the number of the growing marijuana plants being approximately one hundred (100).
>
> The marijuana found on the real estate belonging to the Defendants at the time of the search of September 12, 1989, was cumulatively more than one (1) pound.
>
> The Court first does not believe the testimony of Mr. Clark who said that he was given the seeds to start the marijuana growing operation. The Court further finds that even if Defendants were given seeds to start this grow, that they then used those seeds to manufacture "new" controlled substances which were the subject of the seizure and not a gift.
>
> The Defendants were the owners of a 1977 Titan motorhome seized from them on September 12, 1989.
>
> Found in the aforementioned motorhome, pursuant to a search, was a book on how to grow marijuana, a manual for a set of scales and hollow beverage cans that can be used to hide

illegal drugs. The scales to which the manual pertained was [*sic*] found in Defendants' garage.

In 1981 and 1982, the Defendants packaged marijuana and cocaine for sale in the motorhome, occasionally drove the motorhome to Seattle to sell controlled substances, and used a set of scales . . . in packaging controlled substances.

In the September 1989 search of the motorhome, a narcotics detection dog "alerted" on the floor next to the bed in the motorhome, and begun scratching there. When he did, currency from under the bed "flew" out. The dog had been trained to "alert" to the presence of certain controlled substances, including marijuana and cocaine.

Based upon the preceding facts, the Court finds by preponderance of the evidence that the Defendants had used the motorhome in the recent past . . . to facilitate the sale of controlled substances.

It is not clear from the testimony whether the Defendants or their corporation are owners of a Dodge van sought to be forfeited herein. Defendant Linda L. Clark was not an innocent owner of the above described property.

Based upon the testimony of Detective Sgt. Gates that at least Twenty-six Thousand Dollars ($26,000.00) was spent by the Drug Task Force in the investigation and prosecution of this case and that there were additional expenditures of time and energy attributable to the trials and prosecution of these Defendants as reflected by the clerk's file in each of their cases.

The Court finds that appraised value of the Defendants' real property is Eighty-five Thousand Dollars ($85,000.00), with encumbrances of Sixty-seven Thousand Four Hundred Fifty-four Dollars ($67,454.00) against it, leaving an equity of Seventeen Thousand Five Hundred Forty-six Dollars ($17,546.00). The fair market value of the motorhome is Thirteen Thousand Three Hundred Seventy-five Dollars ($13,375.00). The total unencumbered interest of the Defendants in the real property and motorhome is Thirty Thousand Nine Hundred Twenty-one Dollars ($30,921.00), which is roughly equivalent to the government's expenses in investigating and prosecuting the Defendants.

From these findings, the trial court concluded:

[T]hat the forfeiture statute, RCW 69.50.505, exists, at least in part, to provide a revenue source that will partially defray the costs incurred by government in fighting drug trafficking. The Court further finds that, in considering the real dollar amount that is sought to be forfeited by the Plaintiff herein from the Defendants, Thirty Thousand Nine Hundred Twenty-one Dollars ($30,921.00), forfeiture of that amount would serve to reimburse Plaintiff for the prosecution of the Defendants. Therefore, as a matter of law, the Court finds that the forfeiture of the

Defendants' real property and motorhome is remedial, as characterized by the United States Supreme Court in *U.S. v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 94 L.Ed.2d 487 (1989), and does not constitute double jeopardy.

The Clarks appealed the forfeiture order and that appeal was consolidated with the consolidated appeal of their criminal convictions.

## ISSUES IN CRIMINAL CASE

The Clarks assign error to the trial court's denial of their motion to suppress evidence seized pursuant to the search warrant. Specifically, they assert that certain material facts were not provided to the judge who issued the search warrant; that those omissions were critical in determining the informant's credibility; and that without the material facts, the judge could not make an informed decision as to whether there was probable cause for issuance of the search warrant.

■ An omission or incorrect statement made in support of a search warrant may invalidate the warrant if it was (1) material, and (2) made deliberately or with reckless disregard for the truth. *State v. Jones*, 55 Wn. App. 343, 345, 777 P.2d 1053 (1989) (citing *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981)). Material facts deliberately or recklessly omitted from an affidavit must be added to the information contained in that affidavit and if the affidavit, as supplemented, then fails to support a finding of probable cause, the warrant is void and the evidence is excluded. *State v. Cord*, 103 Wn.2d 361, 376, 693 P.2d 81 (1985).

■ Here, the Superior Court found, after a hearing, that although the omitted information was material, it was not omitted deliberately or with a reckless disregard for the truth. " ' "Reckless" disregard for the truth' may be shown where the affiant 'in fact entertained serious doubts as to the truth' of the information in the absence of the omitted facts." *Jones*, 55 Wn. App. at 346 (quoting *State v. O'Connor*, 39 Wn. App. 113, 117, 692 P.2d 208 (1984), *review denied*, 103 Wn.2d 1022 (1985)). Further, the "serious doubts" must be shown by "(1) actual deliberation on the part of the

affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *State v. Jones, supra.*

The Clarks have not shown that the Superior Court erred in finding that the omissions were made neither deliberately nor with a reckless disregard for the truth. There was no showing of "actual deliberation" by either Swanton or Dalton. Furthermore, the omitted information, although material, does not cast any more doubt on the veracity or accuracy of the information provided by Swanton than did the information disclosed to the judge regarding the strained relationship between Swanton and the Clarks.

The Clarks further contend that article 1, section 7 of the Washington State Constitution should be interpreted to provide greater protection against omissions in search warrant affidavits than is provided under the Fourth Amendment, as interpreted in *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

█ Before an appellate court will analyze a claim under the state constitution, the litigant's briefing must adequately discuss, at a minimum, the six criteria mentioned in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). *See State v. Wethered*, 110 Wn.2d 466, 472, 755 P.2d 797 (1988). Absent such a requirement, courts could be asked to develop without benefit of argument or citation of authority the "adequate and independent state grounds" to support a litigant's assertions. *See Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983).

Even if the *Gunwall* factors are satisfied, that does not necessarily mean that the party seeking protection under the state constitution will prevail. It means only that the court will consider the party's state constitutional claim. Here, the appellants' brief sets forth the *Gunwall* factors, but the discussion of the factors is minimal. Additionally, the appellants cite virtually no authority to support their interpretation and application of the *Gunwall* factors.

Accordingly, because, in our view, the appellants have not adequately discussed the *Gunwall* factors, as required by *Wethered*, we decline to rule on their state constitutional claim.

### ISSUES IN CIVIL CASE

The Clarks make numerous assignments in support of their argument that the order forfeiting their property to Clallam County should be set aside. We will discuss each.

A. Double Jeopardy.

The Clarks argue that the forfeiture violates both the fifth amendment to the United States Constitution and Const. art. 1, § 9. The fifth amendment to the United States Constitution provides:

> nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . ..

Const. art. 1, § 9 provides:

> No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense.[1]

■ The double jeopardy clause of the Fifth Amendment protects against a second prosecution for the same offense after acquittal or conviction; and, pertinent to this case, protects against multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989). A civil sanction is prohibited by the double jeopardy clause "to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution." (Italics ours.) *Halper*, 490 U.S. at 449.[2] Generally, however, a civil remedy does not rise to the level of punishment, unless it is so remote from a remedial goal as to constitute punishment. *Halper*, 490 U.S. at 441. The *Halper* Court further explained that:

---

[1]Other than citing it as a protection against double jeopardy, neither party substantively addresses article 1, section 9.

[2]In *Halper*, the Court was faced with a fixed penalty provision which subjected the offender to a sanction overwhelmingly disproportionate to the damage caused.

[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

*Halper*, 490 U.S. at 448.

The Clarks argue that the purpose of the forfeiture statute, RCW 69.50.505, is solely to penalize, and is therefore contrary to the holding in *Halper*. The Washington Supreme Court, indeed, has stated that "forfeiture proceedings brought pursuant to this statute are quasi criminal in nature since their purpose is to penalize individuals . . .." *Deeter v. Smith*, 106 Wn.2d 376, 378, 721 P.2d 519 (1986). However, *Halper* calls for the characterization of a civil forfeiture statute as punishment *only* when the statute cannot be fairly characterized as remedial. A careful reading of Washington's forfeiture statute discloses its primarily remedial purpose: to allow the government to recover its costs and damages. The Legislature made the following statement of purpose in enacting the statute:

> Drug offenses and crimes resulting from illegal drug use are destructive to society; the nature of drug trafficking results in many property crimes and crimes of violence; state and local governmental agencies incur immense expenses in the investigation, prosecution, adjudication, incarceration, and treatment of drug-related offenders and the compensation of their victims; . . . and the forfeiture of real assets where a substantial nexus exists between the commercial production or sale of the substances and the real property will provide a significant deterrent to crime by removing the profit incentive of drug trafficking, and will provide a revenue source that will partially defray the large costs incurred by government as a result of these crimes. . . .

Laws of 1989, ch. 271, § 211, p. 1298. Although the Washington Legislature expressed both a remedial and a punitive intent in its statement of purpose, the statute itself emphasizes a remedial purpose by providing:

> When property is forfeited under this chapter the board or seizing law enforcement agency may:
> . . . Sell that which is not required to be destroyed by law and which is not harmful to the public. The proceeds and all

moneys forfeited under this title shall be used for payment of all proper expenses of the investigation leading to the seizure, including any money delivered to the subject of the investigation by the law enforcement agency, and of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising, actual costs of the prosecuting or city attorney, and court costs. . . .

Former RCW 69.50.505(f)(2)(i).

The *Deeter* court's characterization of the forfeiture statute as "quasi criminal" was made in determining whether Fourth Amendment protections, including the exclusionary rule, were applicable to forfeiture actions. 106 Wn.2d at 378-79. The court did not analyze disparate remedial and punitive functions of the forfeiture statute. Therefore, the *Deeter* characterization of forfeiture as a "quasi-criminal" penalty does not resolve the question of double jeopardy.

When the forfeiture statute is read in its entirety, its primarily remedial purpose becomes clear. The forfeiture is mainly designed to allow the government to recover its costs of investigation and prosecution, not to penalize the property owner further. Because the purpose of the forfeiture statute is primarily remediation and not punishment, the forfeiture of the Clarks' property was within the purview of *Halper*.

B. Cruel and Unusual Punishment.

The Clarks both argue that the forfeiture of their property is so disproportionate to the crime that it is violative of both the eighth amendment to the United States Constitution and article 1, section 14 of the Washington Constitution. The eighth amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.[3]

The Eighth Amendment prohibits, among other things, punishments that are disproportionate to the crime. The Clarks cite *Solem v. Helm*, 463 U.S. 277, 77 L. Ed. 2d 637,

---

[3]Const. art. 1, § 14 is substantially similar, providing:

"Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."

103 S. Ct. 3001 (1983), which sets forth three factors used to determine proportionality: (1) the gravity of the offense and the harshness of the penalty, (2) comparisons of sentences imposed on other criminals in the same jurisdictions, and (3) comparisons of sentences imposed for the commission of the same crime in other jurisdictions. *Helm*, 463 U.S. at 292. In our judgment, *Helm*, which is a criminal case dealing with criminal punishment, is not applicable to civil forfeiture proceedings.

The Clarks rely on *United States v. Busher*, 817 F.2d 1409 (9th Cir. 1987). In *Busher*, the court determined that the forfeitures of interest in racketeering enterprises under the Racketeer Influenced and Corrupt Organizations Act (RICO) were clearly "punishment", as that term is used in the Eighth Amendment, because they were "in personam" against the defendant. *Busher*, 817 F.2d at 1415. Accordingly, the court held that it was possible for a forfeiture in such a case to constitute cruel and unusual punishment if it was grossly disproportionate to the crime and, consequently, it ordered that a hearing be held on the proportionality of the forfeiture to the crime. As we held above, the forfeiture of the Clarks' property pursuant to state statute was not primarily punitive but remedial in nature. Therefore, *Busher* is inapplicable.

The County cites two federal cases in support of its argument that the forfeiture of the Clarks' property did not violate the Eighth Amendment. We find these cases persuasive.

■■ The first, *United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford Cy., Penna.*, 898 F.2d 396 (3d Cir. 1990), dealt with forfeiture of property under the Comprehensive Drug Abuse Prevention and Control Act of 1970. There, the issue was whether the Eighth Amendment precluded the forfeiture of an entire tract of land when only a small portion was used for illegal purposes. The Third Circuit held that "[w]hen [the statute] is invoked by the government it embraces all of a unitary tract although only part is used in violation of the provision . . .".

*107.9 Acre Parcel,* 898 F.2d at 400. That court established a 2-pronged test to determine when a statutory forfeiture implicates the Eighth Amendment: (1) determine the congressional purpose; and (2) if that purpose is civil, determine whether the statutory scheme is so punitive either in purpose or effect as to negate a civil objective. *107.9 Acre Parcel,* 898 F.2d at 400.

The first prong of this test requires us to examine the legislative purpose behind the forfeiture statute, RCW 69.50-.505, as we did above. The second prong of *107.9 Acre Parcel* requires a determination whether the civil statute is so punitive as to negate a civil purpose. As we held above, the forfeiture act is both remedial and punitive, but is primarily remedial in that it allows the County to recoup its costs of investigation and prosecution. *See* former RCW 69.50.505-(f)(2)(i). Its secondarily punitive purpose does not negate the civil objective.

In the second case cited by the County, *United States v. 141st St. Corp. by Hersh,* 911 F.2d 870 (2d Cir. 1990), the forfeiture involved a 41-unit apartment building in which only 15 units were used for illegal narcotic activities. The court held that Eighth Amendment protection did not apply in civil forfeiture actions because forfeiture is a civil remedial measure, not punishment for a crime. *Hersh,* 911 F.2d at 880. The court explained further that even if the Eighth Amendment were applicable, the question would then be whether the punishment was disproportionate, which it found it was not. *Hersh,* 911 F.2d at 881.

We hold that *107.9 Acre Parcel* and *Hersh* support the County's contention that the forfeiture of all of the Clarks' property was not cruel and unusual punishment under the Eighth Amendment. Furthermore, if the Eighth Amendment applied, the Clarks have failed to show that the punishment was so disproportionate as to violate it.

C. Cost of Jury Trial.

Linda Clark argues that it was improper for the trial court to consider the cost of her jury trial, because it had a "chilling effect" on her exercise of her right to have a jury

trial. We disagree for two reasons. First, the trial court did not find that the costs of the jury trial were included in the costs recoverable by the County. It simply mentioned, in its memorandum opinion, the reasons for the amount of the costs of prosecution:

> the clerks files in each of the defendants' cases reflects that there necessarily was much time and effort expended, in addition to which must be added the jury trial in Mrs. Clark's case that lasted five days.

The principal cost to the State, as found by the trial court, was the $26,000 spent by the drug task force to investigate and prosecute the case. The value of the forfeited property was only $31,000. We are satisfied that the cost to Clallam County for prosecution and attendance at trial would easily exceed $5,000, without any consideration of the costs associated with providing a jury trial to Linda Clark. Therefore, the value of the forfeited property does not exceed the actual cost to the County.

Second, and more important, Linda Clark elected to have a jury trial. This shows that her decision to present her case to a jury was not "chilled". Nor could it have been, since the criminal trial preceded the forfeiture trial. Clark's right to a jury trial was not impaired.

D. Jurisdiction To Forfeit Property.

The Clarks argue, additionally, that the trial court did not have jurisdiction to forfeit their real property because the property was never lawfully seized. This, they assert, is a prerequisite to jurisdiction. *Pelham v. Rose*, 76 U.S. (9 Wall.) 103, 106-07, 19 L. Ed. 602 (1870); *Strong v. United States*, 46 F.2d 257 (1st Cir. 1931). The County agrees that seizure is a prerequisite to forfeiture, but responds that the court had jurisdiction to arrest and then seize and forfeit the real property.

We agree with the County. RCW 69.50.505(b) allows for seizure of real property "upon process issued by any superior court having jurisdiction over the property." It also requires the filing of a lis pendens against the property to be seized. The County filed a complaint and a lis pendens

against the Clarks' property, and then obtained an ex parte warrant of arrest in rem from a superior court judge. Finally, the County presented a motion and affidavit for an order of seizure, which the superior court judge granted. The County complied with the statutory jurisdictional requirements for seizure.

E. Due Process.

The Clarks argue further that the seizure was invalid because they were denied due process by the vagueness of the term "process" in RCW 69.50.505(b), and by entry of an ex parte order to arrest and seize their property. However, "[d]ue process of law guarantees 'no particular form of procedure; it protects substantial rights.'" *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 40 L. Ed. 2d 406, 94 S. Ct. 1895 (1974) (quoting *NLRB v. MacKay Radio & Tel. Co.*, 304 U.S. 333, 351, 82 L. Ed. 1381, 58 S. Ct. 904 (1938)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972)).

The *Mitchell* Court stated that "'[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" 416 U.S. at 611 (quoting *Phillips v. Commissioner*, 283 U.S. 589, 596-97, 75 L. Ed. 2d 1289, 51 S. Ct. 608 (1931)). While the arrest and seizure of the property were approved in ex parte proceedings without notice to the Clarks, the forfeiture of the property did not occur until after the Clarks had notice and an adequate opportunity to challenge the validity of the seizure and forfeiture. RCW 69.50.505(b), (c), and (d) satisfy the requirements for due process in forfeiture proceedings. Although not required by statute, the prior judicial review of the arrest and seizure served to further protect the Clarks' rights to due process. *United States v. Tax Lot 1500, Township 38 South, Range 2 East*, 861 F.2d 232, 236 (9th Cir. 1988); *United States v. A Parcel of Real Property*, 636 F.

Supp. 142, 145-46 (N.D. Ill. 1986). A full trial on the validity of the seizure, as was conducted here, more than satisfies the federal due process standards that must be followed before the defendants can be deprived of their property. *See Tellevik v. Real Property*, 120 Wn.2d 68, 838 P.2d 111 (1992).

F. Burden of Proof.

■ The Clarks contend that because the law regarding the burden of proof in forfeiture proceedings changed after their trial, they should have a new trial. The trial court relied on the holding of *Rozner v. Bellevue*, 56 Wn. App. 525, 784 P.2d 537 (1990), that the law enforcement agency had the burden of proving the nexus between the illegal drug activity and the seized property. The Supreme Court reversed, holding that the claimant had the burden of proving the lack of such a nexus. *Rozner v. Bellevue*, 116 Wn.2d 342, 804 P.2d 24 (1991).

The County satisfied a burden, incorrectly placed upon it, of proving the nexus between the Clarks' illegal drug activity and the seized property. Given this result, it would serve no purpose to give the Clarks a further chance to meet the burden of proving the opposite, that there was not a sufficient nexus.

G. Suppression of Evidence.

■ Finally, the Clarks contend that because evidence obtained from the search warrant was used in the forfeiture proceedings, and because that evidence should have been suppressed in the criminal trial, the evidence should also have been suppressed in the forfeiture trial. However, as the motion to suppress was properly denied, as discussed above, that issue need not be addressed.

The Clarks' criminal convictions and the forfeiture order are affirmed.

PETRICH and SEINFELD, JJ., concur.

Review granted at 121 Wn.2d 1028 (1993).