[No. 22040-1-III. Division Three. August 3, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES J. CREEGAN, *Petitioner*.

*Scot D. Stuart* and *Matthew T. Larsen* (of *Law Office of Scot D. Stuart*), for petitioner.

*Karl F. Sloan, Prosecuting Attorney,* and *Charles D. Short, Deputy,* for respondent.

KATO, C.J.— James Creegan was charged with unlawful failure to use a fish guard under RCW 77.15.310(1)(a). Finding his due process rights were violated, the district court dismissed the charge. The superior court reversed on appeal and remanded for trial on the damage. Claiming again his due process rights were violated, he was entitled

to an advisement of rights before he was questioned, and the seizure of his property was unlawful, Mr. Creegan successfully sought discretionary review. We nonetheless affirm.

On February 23, 2002, Washington Department of Fish and Wildlife Officers Matthew Nixon and James Brown were driving on a public road when they observed a suction dredge in the Similkameen River in Okanogan County, Washington. They also noticed a camp on the south bank of the river.

The officers discovered the dredging operation was not in compliance with fish and wildlife regulations in that the screen intake and nozzle were larger than allowed. They contacted their office to make sure a permit was not in place. When they learned no permit existed, they seized the portions of the dredging operation in violation of the regulations.

The officers then contacted Mr. Creegan at his residence to continue their investigation. He admitted not using a smaller screen as required. The officers told him they were seizing his equipment and would be referring the case to the prosecutor's office.

The State charged Mr. Creegan in district court with unlawful failure to use a fish guard under RCW 77-.15.310(1)(a). He filed a motion to dismiss, claiming that the officers violated his due process rights by seizing his property without notice as required by RCW 77.15.310(2) and RCW 77.55.040. He also claimed the search of his operation was unlawful and the officers failed to give him *Miranda*[1] warnings. The district court agreed the officers did not give Mr. Creegan notice of the seizure as required by the statute and accordingly dismissed the charge.

The State appealed to the superior court, which reversed. It concluded the officers were authorized to seize the property under RCW 77.15.070. The court also held that the officers did not need a warrant to conduct their search

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

because the dredging operation was in an open and public area where Mr. Creegan did not have any expectation of privacy requiring a warrant. The court further determined *Miranda* warnings were not required because Mr. Creegan was not in custody. We granted his motion for discretionary review.

■ ■ Mr. Creegan claims the fish and wildlife officers conducted an unlawful search because they did not have a warrant. Generally, a warrantless search is unreasonable under both the state and federal constitutions. *State v. Neeley*, 113 Wn. App. 100, 106, 52 P.3d 539 (2002). But the constitution protects a person's home and private affairs only from warrantless searches. *State v. Jackson*, 111 Wn. App. 660, 681, 46 P.3d 257 (2002), *aff'd*, 150 Wn.2d 251, 76 P.3d 217 (2003). Anything that is " 'voluntarily exposed to the general public and observable without the use of enhancement devices from an unprotected area is not considered part of a person's private affairs.' " *Jackson*, 111 Wn. App. at 683 (quoting *State v. Young*, 123 Wn.2d 173, 182, 867 P.2d 593 (1994)). The officers arrived at the dredge site by public road, accessible to anyone who traveled there. One of the officers had to wade into the river to see the dredge, but anyone could have done what he did. In these circumstances, the dredge was not part of Mr. Creegan's private affairs and thus was not subject to constitutional protections.

■ Moreover, no search occurs " 'when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used.' " *State v. Bobic*, 140 Wn.2d 250, 259, 996 P.2d 610 (2000) (quoting *State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280 (1996)); *see also State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981) (open view observation occurs from a nonintrusive vantage point of an object that is knowingly exposed to the public). The officers were lawfully at the Similkameen River. They observed the camp and noticed the violations. There was no search.

■ ■ Mr. Creegan next contends his right against self-incrimination was violated because the officers' questioning of him was not preceded by *Miranda* warnings. These warnings were designed to protect a defendant's right not to make incriminating statements during a custodial police interrogation. *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987). Accordingly, the defendant must have been subject to a custodial interrogation by a state agent for *Miranda* to apply. *Id.*

■ The custody requirement is satisfied "as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)). The relevant inquiry is whether " 'the suspect reasonably supposed his freedom of action was curtailed.' " *State v. Heritage*, 114 Wn. App. 591, 598, 61 P.3d 1190 (2002) (quoting *State v. Short*, 113 Wn.2d 35, 41, 775 P.2d 458 (1989)).

Mr. Creegan was at home when the officers approached him. They asked him whether the dredging equipment was his. They also talked about the requirements for a dredging operation. Mr. Creegan told them he was in compliance with the requirements. He also admitted the equipment was his. The officers then told Mr. Creegan they were seizing the equipment.

Mr. Creegan could have ended the conversation at any time. There is nothing in the record to suggest he reasonably believed his freedom of action was curtailed. Because he was not in custody, *Miranda* warnings were not required. *State v. Warness*, 77 Wn. App. 636, 639, 893 P.2d 665 (1995).

■ Mr. Creegan asserts the officers violated his due process rights by seizing his property without notice. Due process generally affords an individual notice and the opportunity to be heard before the government can deprive an individual of a property interest. *Tellevik v. Real Prop. Known as 31641 W. Rutherford St.*, 125 Wn.2d 364, 370-71,

884 P.2d 1319 (1994). But due process does not guarantee a particular form of procedure; it is flexible and calls for procedural protections appropriate for a given situation. *State v. Clark*, 68 Wn. App. 592, 608, 844 P.2d 1029 (1993), *aff'd*, 124 Wn.2d 90, 875 P.2d 613 (1994).

■ ■ The officers here seized Mr. Creegan's property. They did so without notice and without a hearing. When only property rights are involved, however, postponing the judicial inquiry is not a denial of due process so long as the opportunity for a judicial inquiry is adequate. *Clark*, 68 Wn. App. at 608. The officers seized the property under RCW 77.15.070(1), which permits the seizure of items used in violation of Title 77 RCW. RCW 77.15.070(1) details the procedure to recover the seized property. RCW 77.15.070(2)--(6) also indicate that the property seized may be subject to forfeiture and set forth a procedure to be followed in order for forfeiture to occur. That procedure includes a hearing.

RCW 77.15.070 and its mechanism for seizing and forfeiting property is similar to RCW 69.50.505, which permits the seizure and forfeiture of property used in connection with drug crimes. Courts have held that RCW 69.50.505 does not violate due process. *Tellevik*, 125 Wn.2d at 371. Likewise, RCW 77.15.070 does not violate due process.

Mr. Creegan characterizes the issue as a due process claim. In essence, however, he argues a statutory notice requirement. He claims that RCW 77.15.070 conflicts with RCW 77.15.310(2) and RCW 77.55.040, governing the penalties for failing to use a fish guard. He contends RCW 77.15.310(2) and RCW 77.55.040 require that the property owner be given notice before fish and wildlife officers can seize property.

■ RCW 77.15.070(1), however, gives fish and wildlife officers the authority to seize property without a warrant:

Fish and wildlife officers and ex officio fish and wildlife officers may seize without warrant boats, airplanes, vehicles, motorized implements, conveyances, gear, appliances, or other articles they have probable cause to believe have been held with

intent to violate or used in violation of this title or rule of the commission or director. However, fish and wildlife officers or ex officio fish and wildlife officers may not seize any item or article, other than for evidence, if under the circumstances, it is reasonable to conclude that the violation was inadvertent. The property seized is subject to forfeiture to the state under this section regardless of ownership. Property seized may be recovered by its owner by depositing into court a cash bond equal to the value of the seized property but not more than twenty-five thousand dollars. Such cash bond is subject to forfeiture in lieu of the property. Forfeiture of property seized under this section is a civil forfeiture against property and is intended to be a remedial civil sanction.

 Mr. Creegan was charged with failing to use a fish guard properly under RCW 77.15.310(1). He argues RCW 77.15.310(2) required written notification to him before the officers could seize his property. RCW 77.15.310(2) states:

Unlawful failure to use or maintain an approved fish guard, screen, or bypass on a diversion device is a gross misdemeanor. Following written notification to the person from the department that there is a violation, each day that a diversion device is operated without an approved or maintained fish guard, screen, or bypass is a separate offense.

This section neither grants the authority to seize property nor requires notice to be given prior to a seizure. The notification relates only to when the department can charge an individual with separate offenses. It has no bearing on the seizure of evidence.

Mr. Creegan also claims that RCW 77.55.040 required he be given notice prior to any seizure of his property. That statute provides:

A diversion device used for conducting water from a lake, river, or stream for any purpose shall be equipped with a fish guard approved by the director to prevent the passage of fish into the diversion device. The fish guard shall be maintained at all times when water is taken into the diversion device. The fish guards shall be installed at places and times prescribed by the director upon thirty days' notice to the owner of the diversion device.

Each day the diversion device is not equipped with an approved fish guard is a separate offense. If within thirty days after notice to equip a diversion device the owner fails to do so, the director may take possession of the diversion device and close the device until it is properly equipped. Expenses incurred by the department constitute the value of a lien upon the diversion device and upon the real and personal property of the owner. Notice of the lien shall be filed and recorded in the office of the county auditor of the county in which the action is taken.

Thirty days' notice must be given before the diversion device may be taken or seized.

■■■ At issue is the interrelationship between RCW 77.15.070(1) and RCW 77.55.040. To make this determination, we must engage in statutory construction. The primary rule of statutory construction is to give effect to the legislature's intent. *City of Bellevue v. E. Bellevue Cmty. Council*, 138 Wn.2d 937, 944, 983 P.2d 602 (1999). Legislative intent is determined primarily from the statutory language viewed " 'in the context of the overall legislative scheme.' " *Schrom v. Bd. for Volunteer Firefighters*, 117 Wn. App. 542, 546, 72 P.3d 239 (2003) (quoting *Subcontractors & Suppliers Collection Servs. v. McConnachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001)), *review granted*, 151 Wn.2d 1001 (2004). Statutory provisions should be read together with others " 'to achieve a harmonious and unified statutory scheme.' " *Schrom*, 117 Wn. App. at 546 (quoting *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282, *cert. denied*, 531 U.S. 984 (2000)). Statutes relating to the same subject will be read as complementary, rather than in conflict with each other. *State v. O'Brien*, 115 Wn. App. 599, 601, 63 P.3d 181 (2003). Courts should avoid construing a statute in a manner which results in unlikely, strange, or absurd consequences. *State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994).

■■■ Title 77 RCW governs fish and wildlife. The purpose of the title is to preserve, protect, perpetuate, and manage

the fish and wildlife in the state. RCW 77.04.012. In keeping with this purpose, RCW 77.15.070 gives fish and wildlife officers the authority to seize without warrants items that are being used in violation of the title. This statute gave the officers the authority to seize the nozzle and the screen intake on the pump from Mr. Creegan's dredge because neither had a fish guard as required by RCW 77.15.310(1). The officers left the dredge itself in place. Their conduct was proper under RCW 77.15.070.

But Mr. Creegan nevertheless asserts RCW 77.55.040 requires that he be given 30 days' notice before his dredging equipment can be seized. Claiming RCW 77.55.040 is the more specific statute, he argues it controls over the general RCW 77.15.070.

RCW 77.55.040 gives the director the authority to take "possession of the diversion device and close the device until it is properly equipped" 30 days after the owner receives notice to equip the device. It relates to the transfer of possession and closure of the "diversion device." The diversion device was the dredge itself. This statute permits the department's director to "take possession" and close the dredge. The statute does not mention seizing or removing parts of the dredge.

Here, the officers took pieces of equipment that violated Title 77 RCW. The dredge was not seized. Nothing prevented Mr. Creegan from using the dredge. He still had his permit to operate it. He could have fitted the dredge with equipment in compliance with Title 77 RCW and continued operation. RCW 77.55.040 does not apply to this situation. RCW 77.15.070 is therefore the only applicable statute and it permits the seizure of the property.

Interpreting the statute in the manner Mr. Creegan suggests would create an absurd result, which the rules of statutory construction prohibit. *Contreras*, 124 Wn.2d at 747. If we were to adopt Mr. Creegan's position, fish and wildlife officers would be required to observe an equipment violation for 30 days without having any ability to stop it. During this time, the harm to fish would continue un-

abated. This would jeopardize the goal of Title 77 RCW to protect, preserve, perpetuate, and manage fish and wildlife.

Affirmed.

SCHULTHEIS and BROWN, JJ., concur.