2 F.3d 529
 27 Fed.R.Serv.3d 1
 UNITED STATES of America
v.
PREMISES KNOWN AS 717 SOUTH WOODWARD STREET, ALLENTOWN,
PENNSYLVANIA; a Parcel of Real Property and All
Improvements Thereon, and All Appurtenances Thereto, Lying
in the County of Lehigh, Commonwealth of Pennsylvania;
Premises Known as 245-247 North Second Street, Allentown,
Pennsylvania; A Parcel of Real Property and All
Improvements Thereon, and All Appurtenances Thereto, Lying
in the County of Lehigh, Commonwealth of Pennsylvania;
Premises Known as 209-217 North Second Street, Allentown,
Pennsylvania; A Parcel of Real Property and All
Improvements Thereon, and All Appurtenances Thereto, Lying
in the County of Lehigh, Commonwealth of Pennsylvania; and
Any and All Proceeds From the Sale of Said Property.
717 South Woodward Street, Allentown, Pennsylvania; 245 and
247 North Second Street, Allentown, Pennsylvania; and
209-217 North Second Street, Allentown, Pennsylvania, Wyrma
Acevedo Rivera and Luis Rivera*, Appellants.
 No. 92-1916.
 United States Court of Appeals,
Third Circuit.
 Argued May 17, 1993.
Decided Aug. 20, 1993.
 
 Louis T. Savino, Jr., Robert Rebstock (argued), Philadelphia, PA, for appellants.
 Michael M. Baylson, U.S. Atty., Sonia C. Jaipaul, Asst. U.S. Atty., Chief, Financial Litigation Div., James H. Swain (argued), Asst. U.S. Atty., Philadelphia, PA, for appellee.
 Before: STAPLETON, ALITO and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 We consider here whether, under some circumstances, a claimant asserting the innocent owner defense to forfeiture of property used in federal drug offenses may successfully oppose a motion for summary judgment solely by declaring under oath that he or she did not know of the activity giving rise to forfeiture. On the present record, we hold that a reasonable juror could believe the assertions of claimants Wyrma Acevedo Rivera and Luis Rivera and that there is thus a genuine issue of fact for trial.
 
 I.
 
 2
 The United States brought this civil forfeiture action pursuant to the Controlled Substances Act, 21 U.S.C. Sec. 881(a)(7), against three parcels of real property in Allentown, Pennsylvania, used by Jaime Rivera to facilitate cocaine distribution. Utilizing the evidence from its successful prosecution of Jaime, the government showed probable cause to believe that the defendant property was used to facilitate violations of the federal drug laws. The burden then shifted to the claimants to the property, Jaime Rivera's wife, Wyrma Acevedo Rivera, and another man, Luis Rivera, to show by a preponderance of the evidence that the property was not used to further drug crimes, or that they were innocent owners because the illegal activity occurred either without their knowledge or without their consent. Id. ("no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner"); United States v. Property Known as 6109 Grubb Road, 886 F.2d 618, 626 (3d Cir.1989). Wyrma and Luis asserted, in sworn pleadings and answers to interrogatories, that they were owners within the meaning of the forfeiture statute,[1] and that they did not know of Jaime's drug activity.
 
 
 3
 The facts concerning the defendant properties, and Jaime Rivera's drug activity there, are not in dispute. The property at 717 South Woodward Street was the residence of Jaime and Wyrma, who held title as tenants by the entireties. Jaime arranged to consummate a three kilogram deal there on July 31, 1991. Pursuant to a search warrant executed that afternoon, officers found a brown paper bag containing three kilos on the table in the dining room and also found drug paraphernalia in a box and trash bag in the basement.
 
 
 4
 The second defendant property housed the El Nuevo Puerto Rican Food Market, which Wyrma operated with her husband; they again held title as tenants by the entireties. Jaime often kept cocaine there and received deliveries from a courier there about three times a month. It was also the site of meetings and telephone calls between Jaime and a government informant to arrange drug transactions.
 
 
 5
 Jaime Rivera was the sole record owner of the third property, known as the Liederkranz Club. Luis Rivera claims an ownership interest, however, by virtue of a resulting trust arising from his contribution to the down payment on this property. Jaime used the Liederkranz property to negotiate and consummate several cocaine transactions.
 
 
 6
 In response to the government's complaint of forfeiture, Wyrma and Luis claimed to be innocent owners, she of all three properties and he of the Liederkranz Club. In her verified pleadings and answers to interrogatories, Wyrma asserted that she did not know of her husband's drug dealing, that there was no evidence that she did, and that during the course of Jaime's criminal conduct she operated the food market and used earnings from it to maintain the South Woodward residence, thus explaining that her support and the support of the marital household came from a legitimate source. The district court granted summary judgment for the government, 804 F.Supp. 716 (1992), reasoning that Wyrma's "bare denial coupled with whatever tenuous inferences can be drawn from her allegations" was merely "colorable" and "not significantly probative" considering the frequency and kind of drug activity occurring where she lived and worked; the court also found that Wyrma had no ownership interest in the Liederkranz property and thus could not assert the innocent owner defense in regard to it. As for Luis, the court recognized that there was no evidence to suggest that he knew of Jaime's activity but nonetheless found his bare denial of knowledge insufficient to create a triable issue of fact.
 
 
 7
 The district court's subject matter jurisdiction was conferred by 21 U.S.C. Sec. 881 and 28 U.S.C. Sec. 1335, and our jurisdiction, following the entry of summary judgment, rests on 28 U.S.C. Sec. 1291. Our review of a grant of summary judgment is, as always, plenary. Metzger v. Osbeck, 841 F.2d 518, 519 (3d Cir.1988).
 
 II.
 A.
 
 8
 Although there is case law that can be read to suggest otherwise, we know of no basis for concluding that the precepts governing resolution of summary judgment motions generally are not equally applicable to summary judgment motions in forfeiture proceedings. To the contrary, it is clear that Federal Rule of Civil Procedure 56 and the case law interpreting that rule control the disposition of summary judgment motions in forfeiture proceedings. United States v. One 107.9 Acre Parcel of Land Located in Warren Township, 898 F.2d 396, 398 (3d Cir.1990); United States v. Lot 4, Block 5 of Eaton Place, 904 F.2d 487, 490 (9th Cir.1990). Accordingly, we begin our analysis with a review of Rule 56 jurisprudence and the cases which have applied that jurisprudence in the context of forfeiture proceedings.
 
 
 9
 Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). A genuine issue exists, and thereby precludes summary judgment, when there is evidence from which a reasonable trier of fact could find in favor of the nonmoving party, viewing the record as a whole in light of the evidentiary burden the law places on that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56, 106 S.Ct. 2505, 2512-14, 91 L.Ed.2d 202 (1986). Although entitled to the benefit of all justifiable inferences from the evidence. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered. Fed.R.Civ.P. 56(e). Moreover, if the nonmoving party's evidence, when viewed in the context of all of the evidence, could not be credited by a rational juror, summary judgment may be granted. Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510-11.
 
 
 10
 In accordance with these general principles, a motion for summary judgment in a civil forfeiture action must be evaluated "in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." United States v. Lot 4, Block 5 of Eaton Place, 904 F.2d 487, 490 (9th Cir.1990) (citation omitted). A claimant resisting forfeiture of property based on the innocent ownership defense must prove by a preponderance of the evidence that the activity giving rise to forfeiture occurred either without the claimant's knowledge or without the claimant's consent. Grubb Road, 886 F.2d at 626. Thus, when the government seeks summary judgment against such a claimant, the claimant must come forward with sufficient evidence to warrant a reasonable juror's concluding that there was a lack of knowledge or consent.
 
 
 11
 It is clear that a claimant's bare denial of knowledge or consent may be insufficient to withstand summary judgment in a forfeiture case. In United States v. One 107.9 Acre Parcel of Land Located in Warren Township, 898 F.2d 396 (3d Cir.1990), for example, we upheld summary judgment for the government on a wife's claim that she had not consented to her husband's marijuana harvesting; although the wife averred in an affidavit that she had pleaded with her husband to stop and had threatened to leave him, her self-serving statements were insufficient to create a triable issue in light of undisputed facts showing her substantial and protracted participation in the operation, including her preparation and maintenance of elaborate records. Id. at 398-99. In a similar vein is United States v. Property Located at 15 Black Ledge Drive, 897 F.2d 97 (2d Cir.1990), where the wife of a convicted drug dealer asserted without elaboration that she had no knowledge that her husband used their home in connection with the sale or use of drugs. The court found the allegation incredible as a matter of law in light of evidence that drugs, drug paraphernalia, a revolver, and large sums of cash were seized from the family room, that another weapon was found in the kitchen, that vials of cocaine were discovered in the master bedroom, and that the wife appeared unsurprised when she came home and saw that agents were searching for and had found drugs. Id. at 102.
 
 
 12
 It is thus true that a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact where that assertion is impeached by a well supported showing to the contrary. It is also true, however, that a sworn assertion of an absence of knowledge can suffice to create a genuine issue of material fact. E.g.,United States v. 8848 S. Commercial St., 757 F.Supp. 871, 885 (N.D.Ill.1990) (denying summary judgment because of the claimant's denial of knowledge and observing: "Where courts have granted the government's motion for summary judgment in forfeiture cases despite the claimant's assertion of ignorance, they have done so because the government has presented so much evidence from which the claimant's actual knowledge can be inferred that the claimant's unsupported assertion of ignorance is simply implausible."). A statement of a person that he or she lacks or lacked knowledge of a particular matter is a statement of a "specific fact." Moreover, it is a statement of specific fact about the declarant's state of mind. When the state of mind of a person is at issue and the record contains direct evidence of that state of mind in the form of that person's sworn statement, conflicting circumstantial evidence normally creates only an issue of credibility for trial and summary judgment is inappropriate. As we cautioned in Metzger v. Osbeck, 841 F.2d 518, 521 (3d Cir.1988), "a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases 'much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder' "; see also 10A Wright, Miller & Kane, Federal Practice and Procedure Secs. 2730, 2527.
 
 
 13
 Since a claimant advancing an innocent owner defense has the ultimate burden of proof on the issue of an absence of knowledge, he or she can successfully resist a motion for summary judgment only by coming forward with competent evidence tending to show an absence of knowledge. An affidavit of the claimant denying knowledge is competent evidence tending to show this and in the absence of other evidence rendering it incredible, such an affidavit creates a genuine issue of material fact. Thus, although the claimant has the burden of coming forward with evidence that would support a finding of an absence of knowledge, it will behoove the government, when faced with a sworn denial of knowledge, to come forward with all of the contrary circumstantial evidence it possesses. In the final analysis, unless the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit the claimant's denial, summary judgment cannot properly be granted.
 
 
 14
 Turning to this case, we first ask whether there is any reason a rational jury could not believe Luis's sworn testimony that he had no knowledge of Jaime's drug activity at the Liederkranz Club property. We find none. The government's evidence shows only that Manuel De La Cruz, an individual cooperating with the government's investigation, negotiated purchases of cocaine from Jaime at the Liederkranz property on three occasions, June 20th, 24th and 26, 1990, and that on two of the three occasions Jaime had cocaine in his possession. On one of these occasions, De La Cruz was accompanied by an undercover agent. Despite the fact that government witnesses were present on each of these occasions and that the government conducted an intensive investigation of Jaime's drug activities, no evidence was tendered that Luis was on the premises of the club on any of these occasions or even that Luis frequented the club on a regular basis. Thus, a reasonable jury could clearly choose to believe his sworn testimony that he was unaware of Jaime's drug activities at the Liederkranz Club. Accordingly, the summary judgment against Luis cannot stand.
 
 
 15
 While the record with respect to Wyrma presents a closer question, we reach the same conclusion with respect to the summary judgment against her. Wyrma insists that she had no knowledge of Jaime's drug activity, that there is no evidence that she did, and that she supported the family with earnings from the family store. The government's evidence, which Wyrma does not dispute, is essentially that (1) Wyrma and Jaime were husband and wife and worked together at the Food Market, (2) about three times a month from May 1991 to July 1991, a courier delivered cocaine for Jaime to the Food Market, (3) on one of these occasions the courier was asked to leave the cocaine in the bathroom of the market, (4) on six occasions between May 31, 1991 and July 29, 1991, De La Cruz negotiated purchases, personally or by telephone, with Jaime when he was in the Food Market, (5) on July 31, 1991, a courier delivered three kilograms of cocaine to Jaime at the Rivera residence, (6) when Jaime summoned De La Cruz to the Rivera residence on July 31st, he showed him the three kilograms in a paper bag that Jaime picked up from the floor of the garage, and (7) when the police executed a search warrant later that day, they seized the three kilograms from the dining room table of the residence and found drug paraphernalia in a box and bag in the basement. Despite the fact that the government conducted substantial surveillance of the Food Market and the Rivera residence, including surveillance of the residence from the time of the delivery of the cocaine to the time of the raid, no evidence was tendered placing Wyrma at her residence on July 31, 1991, or at the scene of any drug related conversation or transaction anywhere else.
 
 
 16
 Clearly, a rational trier of fact could permissibly infer from the government's evidence that Wyrma must have been aware of her husband's drug activities at their store and residence. That is not the issue for us to resolve, however. The issue presented by this appeal is whether the government's evidence was sufficiently strong that a rational trier of fact could not choose to believe Wyrma's sworn testimony that she did not know of her husband's activities. We conclude that the government's evidence before the district court was not so strong as to preclude a reasonable jury from crediting Wyrma's testimony and deciding in her favor.[2] It follows that there is a genuine issue of material fact regarding Wyrma's knowledge of her husband's activities.
 
 B.
 
 17
 A person must be an "owner" to assert the innocent owner defense to forfeiture of property. 21 U.S.C. Sec. 881(a)(7). Congress directed that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." United States v. 92 Buena Vista Ave., 937 F.2d 98, 102 (3d Cir.1991), aff'd, --- U.S. ----, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (quoting 1978 U.S.Code Cong. & Admin.News at 9522-23). Although Jaime Rivera is the sole record owner of the Liederkranz property, it was purchased during his marriage to Wyrma and she claims to have an ownership interest by virtue of the definition of "marital property" in the Divorce Chapter of the Pennsylvania Domestic Relations Law, 23 Pa.Cons.Stat.Ann. Sec. 3501 (1991). The district court found this provision applicable only in the context of an equitable division of property upon divorce and thus concluded that Wyrma lacked standing to assert the innocent owner defense with respect to the Liederkranz property.[3] Since the claim of ownership is predicated on the law of Pennsylvania, we, like the district court, must attempt to resolve it as would the Supreme Court of Pennsylvania. Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir.1991).
 
 
 18
 Section 3501 of the Divorce Chapter provides that "[a]s used in this chapter, 'marital property' means all property acquired by either party during the marriage." 23 Pa.Cons.Stat.Ann. Sec. 3501 (1991). The next section establishes a framework for the equitable division of marital property in an action for divorce. 23 Pa.Cons.Stat.Ann. Sec. 3502. The primary objective of Sec. 3501 is clearly to designate the property that is subject to disposition by the court in a divorce proceeding. The issue here presented is whether Sec. 3501 bestows an interest on one spouse in property owned by the other prior to and independent of a property division under Sec. 3502.
 
 
 19
 Although the Pennsylvania Supreme Court has not considered this issue, the Pennsylvania Superior Court has declined to read the marital property provision as conferring an ownership interest outside the context of equitable distribution. In Haviland v. Haviland, 333 Pa.Super. 162, 481 A.2d 1355 (1984), the court found the provision inapplicable where a spouse had died before a divorce was granted; applying the statute to recognize an interest in the surviving spouse in property owned by the decedent, the court reasoned, would have been contrary to the language and purpose of the Divorce Chapter and would have upset established rules of probate and intestate succession. Id., 481 A.2d at 1357. In Ibarra v. Prudential Prop. & Cas. Ins., 402 Pa.Super. 27, 585 A.2d 1119 (1991), the court found that the function of the marital property provision was limited to prescribing the property available for distribution upon divorce. Thus, a wife was not considered to be an owner of her husband's uninsured car under the Motor Vehicle Financial Responsibility Law, which makes any owner of an uninsured vehicle ineligible to receive uninsured motorist benefits under the state's assigned claims plan. Id., 585 A.2d at 1122. Applying Ibarra in recent decisions involving the Motor Vehicle Act, the court has reiterated that a "mere contingent equitable distribution right" is insufficient to establish an ownership interest. Bethea v. Pa. Fin. Resp. Assigned Cl., 407 Pa.Super. 57, 595 A.2d 122, 124 (1991).[4]
 
 
 20
 In forfeiture actions, federal courts applying the laws of other states have refused to find that a right to equitable distribution of marital property confers ownership independent of a divorce proceeding. SeeUnited States v. 116 Emerson St., 942 F.2d 74, 79 n. 3 (1st Cir.1991) (stating that Rhode Island's equitable distribution statute applies only to assignment of property interests during divorce proceedings); United States v. Schifferli, 895 F.2d 987, 989 n. * (4th Cir.1990) (stating that wife had no equitable interest in property before divorce, as "marital property" does not exist under South Carolina law until the filing of divorce litigation); United States v. 5854 N. Kenmore, 762 F.Supp. 204, 208 (N.D.Ill.1991) (holding that Illinois Marriage and Dissolution Act is concerned with what constitutes marital property only at time of divorce).
 
 
 21
 Based on the relevant decisions of the Pennsylvania Superior Court and those of federal courts interpreting analogous state laws, we find no indication that the Pennsylvania Supreme Court would interpret the marital property provision of the Divorce Chapter to confer a present ownership interest in the Liederkranz property on Wyrma solely by virtue of her marriage to Jaime. We thus agree with the district court that Wyrma cannot assert the forfeiture statute's innocent ownership defense as to this property.
 
 III.
 
 22
 We will affirm the summary judgment of the district court against Wyrma Rivera with respect to her claim to the Liederkranz property. We will reverse the summary judgment with respect to her other claims as well as the summary judgment against Luis Rivera. The case will be remanded to the district court for further proceedings consistent with this opinion.
 
 
 23
 SEITZ, Circuit Judge, concurring and dissenting.
 
 
 24
 With one limited exception, the court reverses the order of the district court granting summary judgment for the government on its claim to forfeit three properties because of their use in drug transactions conducted by the convicted defendant, Jaime Rivera ("Jaime").[1] I write separately because my conclusion differs from the majority's as to the Food Market property.
 
 I. Liederkranz Club
 
 25
 (a) Wyrma Rivera's Claim
 
 
 26
 The first property sought to be forfeited by the government is known as the Liederkranz Club ("Club"). Legal title to the Club was held solely by Jaime. Nevertheless, Wyrma, Jaime's wife, asserts an ownership interest in the club based on the marital property provisions of the Pennsylvania Domestic Relations Law. I agree with the other members of the court that Wyrma lacked standing to advance such a claim and thus, summary judgment against her was properly granted.
 
 
 27
 (b) Luis Rivera's Claim
 
 
 28
 Luis Rivera ("Luis") claims an equitable interest in the Club property based on the sworn allegation in answer to the Government's complaint that he advanced part of the purchase price for the property and contributed to monthly mortgage payments. His answer also recites that he was unaware of and did not consent to any drug activities at the Club. Under our case law, as the district court notes, an equitable interest in real estate may be asserted in forfeiture proceedings. United States v. 92 Buena Vista Ave., 937 F.2d 98, 102 (3d Cir.1991), aff'd, --- U.S. ----, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). Since the government has not filed any documents contradicting Luis's position, I join the court in concluding that it was inappropriate to grant summary judgment to the government on this record.
 
 II. El Nuevo Puerto Rican Food Market
 
 29
 The Food Market property was held of record by Jaime and Wyrma as tenants by the entireties. Wyrma states under oath that she had no knowledge of Jaime's drug activities involving the Food Market property and that she never consented to its use for that purpose. The majority concludes that, given her sworn denial, it was error on this record for the district court to grant the government's motion for summary judgment.
 
 
 30
 Wyrma's bare bones denial of knowledge must be sharply contrasted with the undisputed record facts relied upon by the government in support of its motion for summary judgment.[2] They may be summarized as follows: (1) Wyrma and Jaime were husband and wife and worked together at the Food Market, (2) about three times a month from May 1991 to July 1991, a courier delivered cocaine to the Food Market for Jaime, (3) on one of these occasions the courier was asked to leave the cocaine in the bathroom of the Food Market, and (4) on six occasions between May 31, 1991 and July 29, 1991, De La Cruz negotiated purchases, personally or by telephone, with Jaime when he (Jaime) was in the Food Market.
 
 
 31
 As the majority states, the issue is "whether the government's evidence was sufficiently strong that a rational trier of fact could not choose to believe Wyrma's sworn testimony that she did not know of her husband's activities." (Op. p. 535).
 
 
 32
 Wyrma admits that she and her husband worked together in the store and resided together at a different location. To these unchallenged facts must be added the undisputed facts of record of Jaime's extensive and prolonged drug activities at the Food Market. When these facts are juxtaposed with Wyrma's claim of lack of knowledge, it strains credulity beyond the breaking point to conclude that a rational fact finder could reasonably find that Wyrma did not know of her husband's extensive drug activities at the store property. For me, there is no genuine issue of material fact on this record as to Wyrma's claimed lack of knowledge. The same is true of her claimed lack of consent under the circumstances. SeeAnderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Her denials bring to mind Jonathan Swift's aphorism that there's none so blind as they that won't see.[3] I would affirm the district court's order granting summary judgment to the government as to the Food Market.
 
 III. The Woodward Street Property
 
 33
 The court concludes that Wyrma's sworn testimony that she did not know of or consent to her husband's drug activities at their residence on Woodward Street was sufficient to raise issues of material fact that precluded summary judgment.
 
 
 34
 The undisputed facts of record show that (1) on July 31, 1991, a courier delivered three kilograms of cocaine to Jaime at the residence; (2) when Jaime summoned De La Cruz to the house on July 31st, he showed him the three kilograms in a paper bag that Jaime had picked up from the floor of the garage; (3) when the police executed a search warrant later that day, they seized the three kilograms from the dining room table; and (4) the police also found drug paraphernalia in a box and bag in the basement.
 
 
 35
 The government's evidence of record in rebuttal to Wyrma's sworn denial related to a single day and did not place Wyrma at the residence on that day. Not without some sense of unreality, I join in the reversal of summary judgment for the government on Wyrma's interest in the residence. SeeUnited States v. 1500 Lincoln Avenue, 949 F.2d 73, 77-78 (3d Cir.1991).
 
 
 
 *
 purs. to Amended Notice of Appeal filed 12/3/92
 
 
 [1]
 The term "owner" is broadly defined by the statute to include "any person with a recognizable legal or equitable interest in the property seized," United States v. 92 Buena Vista Ave., 937 F.2d 98, 102 (3d Cir.1991), aff'd, --- U.S. ----, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (quoting 1978 U.S.Code Cong. & Admin.News at 9522-23)
 
 
 [2]
 The government did not take the deposition of the claimants in this case. If such depositions had been taken and if the claimants had provided incredible explanations of their claims of innocence (or if they had refused to provide any detailed explanations), we would be presented with questions different from those now before us
 
 
 [3]
 In United States v. Contents of Accounts, 971 F.2d 974 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993), we explained that to challenge a forfeiture, a claimant must satisfy statutory and constitutional standing requirements. Article III standing in this context generally requires a showing that claimant is a "colorable owner of the res" or has "any colorable possessory interest in it." Id. at 984-85. The constitutional prerequisite differs little from the showing of ownership required under 21 U.S.C. Sec. 881(a)(7)
 
 
 [4]
 In Bethea v. Pa. Fin. Resp. Assigned Cl., 407 Pa.Super. 57, 595 A.2d 122 (1991), the court held that in light of the purpose of the Motor Vehicle Act, the spouse of the title owner of an uninsured vehicle could be considered an owner, and thus denied benefits, if there were facts indicating that the spouse actually exercised the rights of ownership; however, a "mere contingent equitable distribution right" was insufficient to establish an ownership interest. Id., 595 A.2d at 124, 126; see also Allen v. Merriweather, 413 Pa.Super. 410, 605 A.2d 424, 426 (1992), appeal denied, 620 A.2d 489 (Pa.1993) (finding that evidence of de facto control and ownership established that spouse of title owner was additional owner for purposes of Motor Vehicle Act)
 
 
 [1]
 Although Jaime unsuccessfully resisted the Government's motion for summary judgment forfeiting his interest in the properties, he does not appeal
 
 
 [2]
 Claimants' counsel seems to suggest that the government's record showing is hearsay and therefore presumably not cognizable on summary judgment. Claimants' counsel did not dispute the government's statement of the facts in its summary judgment motion. Thus, the material is not hearsay, Fed.R.Evid. 801(d)(2), even assuming that it might otherwise be such
 
 
 [3]
 Political Conversation, Jonathan Swift